[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10971

_____

MARKEN LEGER,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A075-313-760

_____

Before JORDAN and ROSENBAUM, Circuit Judges, and MANASCO,* District Judge.

JORDAN, Circuit Judge:

In *Esquivel-Quintana v. Sessions*, 581 U.S. 385 (2017), the Supreme Court considered whether a California conviction for unlawful sexual intercourse with a minor—pursuant to a statute which prohibited consensual sexual intercourse between a 21-year-old and a 17-year-old—constituted the "sexual abuse of a minor," which is a listed aggravated felony under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(A). The INA does not define "sexual abuse of a minor," but the Supreme Court unanimously held (without Justice Gorsuch participating) that "in the context of statutory rape offenses that criminalize sexual intercourse based solely on the age of the participants, the generic federal definition of sexual abuse of a minor requires that the victim be younger than 16." *Esquivel-Quintana*, 581 U.S. at 390–1. Because the California statute at issue did not "categorically fall within that definition," the Court concluded that a conviction pursuant to it was not an aggravated felony. *See id.* at 391.

In this case, we must decide whether a Florida conviction for lewd and lascivious battery under the 2008 version of Fla. Stat. § 800.04(4)—an offense which the Florida Supreme Court has characterized as statutory rape—constitutes the sexual abuse of a

---

* The Honorable Anna M. Manasco, U.S. District Judge for the Northern District of Alabama, sitting by designation.

minor, and is therefore an aggravated felony under the INA. Applying the categorical approach, and building on the Supreme Court's analysis in *Esquivel-Quintana*, we hold that it is not. The least culpable conduct under § 800.04(4) is consensual sexual activity between adolescents who are 12 to 15 years old, with no minimum age required for the perpetrator. The statute therefore sweeps more broadly than the generic federal definition of "sexual abuse of a minor," which in the statutory rape context before us requires an age difference of at least one year between the perpetrator and the victim.

We realize that this short summary may be unintelligible to those who are unversed in the intricacies of immigration law and unfamiliar with the Supreme Court's categorical approach for determining which state offenses constitute aggravated felonies—and maybe even to those who profess some expertise. In the pages that follow, we'll do our best to explain.

I

Marken Leger, a citizen of Haiti, has lived in the United States as an asylee since 2000. In 2009, he pleaded no contest to a charge of lewd and lascivious battery, in violation of Fla. Stat. § 800.04(4).[1]

---

[1] Given the date of Mr. Leger's conviction, all references in this opinion to § 800.04(4)—unless otherwise stated—are to the 2008 version. The statute has been amended since then, most recently in 2022.

In 2013 and 2018, Mr. Leger pleaded no contest to two other offenses. Both were the possession of marijuana, in violation of Fla. Stat. § 893.13(6)(b).

The government served Mr. Leger with a notice to appear in 2019, initiating removal proceedings against him pursuant to 8 U.S.C. §§ 1227(a)(2)(E)(i) & (a)(2)(B)(i). The notice did not include a hearing date and time.

On July 1, 2019, the immigration court sent Mr. Leger a notice of a hearing scheduled for 8 a.m. on July 9, 2019. Several days later, the government amended the notice to appear to reflect its position that Mr. Leger was also removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).

Mr. Leger appeared at his hearing, which was continued to permit him to obtain counsel. Eventually, Mr. Leger retained counsel who appeared on his behalf at a hearing held in September of 2019. Mr. Leger moved to terminate the proceeding, arguing that the notice to appear was deficient because it failed to specify a date and time for the hearing. The immigration judge denied the motion. Mr. Leger subsequently admitted some of the underlying facts alleged in the notice to appear but denied that he was removable as alleged.

After a hearing on the merits, the immigration judge concluded that Mr. Leger was removable. As relevant here, the immigration judge determined that he was inadmissible pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) because his marijuana possession convictions under Fla. Stat. § 893.13(6) constituted controlled substance

offenses under the INA.  The immigration judge additionally found that his conviction under Fla. Stat. § 800.04(4) was an aggravated felony.

Mr. Leger appealed to the BIA.  Without opining on the merits of the appeal, the BIA remanded the matter to the immigration judge to decide whether Mr. Leger's status as an asylee should be terminated.  Because someone like Mr. Leger cannot be lawfully removed without termination of his asylee status, *see* 8 C.F.R. § 1208.22, the BIA explained, that issue needed to be resolved by the immigration judge.

On remand, the immigration judge terminated Mr. Leger's asylee status pursuant to 8 C.F.R. § 1208.24.  In doing so, the immigration judge ruled that his conviction under Fla. Stat. § 800.04(4) was an aggravated felony because it constituted the sexual abuse of a minor.  *See* A.R. 51–53.  The immigration judge thought that § 800.04(4) is divisible, but concluded that divisibility did not matter because all the conduct prohibited by subsection (4) of the statute constituted the sexual abuse of a minor.  *See* A.R. 53.

Mr. Leger again appealed, but a single member of the BIA dismissed the appeal and affirmed the immigration judge's decision.  The BIA agreed with the immigration judge that Mr. Leger's convictions for marijuana possession under Fla. Stat. § 893.13(6) rendered him removable.  *See* A.R. 6–7.  The BIA also concluded that the immigration judge properly terminated Mr. Leger's asylee status because the conviction under Fla. Stat. § 800.04(4) constituted the sexual abuse of a minor and was therefore an aggravated

6                    Opinion of the Court                    22-10971

felony.  *See* A.R. 4–6.  Finally, the BIA rejected Mr. Leger's argu-
ment based on the notice to appear, explaining that the defective
notice did not deprive the immigration judge of jurisdiction.  *See*
A.R. at 10.[2]

This is Mr. Leger's petition for review.

**II**

We start with the easier of the issues, the effect of Mr.
Leger's convictions for possession of marijuana under Fla. Stat. §
893.13(6)(b).  The immigration judge and the BIA concluded that
these convictions constituted controlled substance offenses under
the INA and rendered Mr. Leger removable pursuant to 8 U.S.C. §
1227(a)(2)(B)(i) and inadmissible pursuant to 8 U.S.C. §
1182(a)(2)(A)(i).

In *Said v. U. S. Attorney General*, 28 F. 4th 1328, 1333 (11th Cir.
2022), which was decided three weeks after the BIA dismissed Mr.
Leger's appeal, we explained that "[b]y the plain language of [Fla.
Stat.] § 893.02(3), not all substances that it proscribes are federally
controlled."  For example, "[§] 893.02(3) includes all parts of the
marijuana plant, while [21 U.S.C. § 802(16), the federal statute de-
fining a controlled substance,] does not."  *Id.* (quotation marks
omitted).   Accordingly, we held that a Florida conviction for

---

[2]Like the immigration judge, the BIA believed that § 800.04(4) is divisible but
thought divisibility was irrelevant because the "full range of conduct" pro-
scribed by subsection (4) of the statute constituted the sexual abuse of a minor.
*See* A.R. 5.

possession of marijuana under Fla. Stat. § 893.13(6)(a) was not a controlled substance offense as defined under federal law. *See Said*, 28 F.4th at 1332–34.

Mr. Leger argues, and the government concedes, that *Said* controls. *See* Petitioner's Br. at 59-62; Respondent's Br. at 32. We agree. Mr. Leger's statute of conviction, Fla. Stat. § 893.13(6)(b), is overbroad because Fla. Stat. § 893.02(3)—which defines marijuana—includes parts of the marijuana plant that its federal counterpart, 21 U.S.C. § 802(16), does not. Mr. Leger's marijuana possession convictions therefore do not constitute controlled substance offenses as defined under federal law. As a result, the BIA erred in determining that Mr. Leger was subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) and inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(A)(i).

## III

We now address whether Mr. Leger's conviction under Fla. Stat. § 800.04(4) constitutes an aggravated felony. This is a "question of law subject to plenary review." *Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023).

## A

Under the INA, a grant of asylum may be terminated for a number of reasons, including a conviction for a "particularly serious crime." 8 U.S.C. § 1158(b)(2)(A)(ii) & (c)(2)(B). A conviction for an aggravated felony is, statutorily, considered a conviction for a particularly serious crime for purposes of asylum. *See* §

1158(b)(2)(B)(i). This case therefore turns on whether Mr. Leger's conviction under Fla. Stat. § 800.04(4) is an aggravated felony.

As relevant here, the INA defines an aggravated felony as including the "sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A) (listing "murder, rape, or sexual abuse of a minor"). If Mr. Leger's § 800.04(4) conviction constitutes the sexual abuse of a minor within the meaning of the INA, his asylee status was properly terminated, making him removable.

Mr. Leger argues that the generic federal definition of the sexual abuse of a minor requires a four-year age difference between the perpetrator and the victim. Based on this premise, he contends that his conviction under § 800.04(4) is not the sexual abuse of a minor because the statute does not include a four-year age differential. *See* Petitioner's Br. at 16–17. The government maintains that the generic federal definition of sexual abuse of minor does not include any age differential and asserts that our precedent calls for rejection of Mr. Leger's argument. *See* Respondent's Br. at 19–21.

The parties agree that the categorical approach applies here, and we concur in their assessment. Even if § 800.04(4) is divisible, such that the modified categorical approach might apply, *see, e.g., Pereida v. Wilkinson*, 592 U.S. 224, 238–39 (2021), the documents presented by the government at the removal proceeding do not shed any light on whether Mr. Leger violated subsection (a) or subsection (b) of § 800.04(4). *See* A.R. 612–13; *George v. U.S. Att'y Gen.*, 953 F.3d 1300, 1304–05 (11th Cir. 2020).

Under the categorical approach, "we ask whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." *Esquivel-Quintana*, 581 U.S. at 389 (internal quotation marks and citation omitted). In a case like this one, "we presume that the state conviction rested upon . . . the least of th[e] acts criminalized by the statute, and then we determine whether that conduct would fall within the federal definition of the crime." *Id.* (alteration in original) (internal quotation marks and citation omitted). And we do not consider Mr. Leger's actual conduct. *See Pereida*, 592 U.S. at 234; *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013).

**B**

We begin with § 800.04(4), the Florida statute Mr. Leger violated. In 2008, when the offense was committed, the statute prohibited (a) "[e]ngag[ing] in sexual activity with a person 12 years of age or older but less than 16 years of age," or (b) "[e]ncourag[ing], forc[ing], or entic[ing] any person less than 16 years of age to engage in sadomasochistic abuse, sexual bestiality, prostitution, or any other act involving sexual activity." Fla. Stat. § 800.04(4)(2008). Neither the victim's consent, nor the ignorance of or bona-fide belief in the victim's age, could be asserted as defenses. *See* §§ 800.04(2)–(3).

The least of the conduct criminalized by § 800.04(4) is consensual sexual activity between adolescents aged 12 to 15, as set out in subsection (a), with no minimum age for the perpetuator. This is akin to what the law generally calls statutory rape. *See*

*Khianthalat v. State*, 974 So. 2d 359, 362 (Fla. 2008) (agreeing that §
800.04(4) was "intended to criminalize sexual activity with children
twelve years of age or older but less than sixteen years of age even
where the activity is consensual"); *State v. Snyder*, 807 So. 2d 117,
120 (Fla. 3d DCA 2002) ("[C]ourts have previously held that 'lewd
and lascivious conduct' in violation of [§] 800.04 carries with it the
same concept of 'strict liability' that has traditionally characterized
'statutory rape[.]'"). Indeed, the Florida Supreme Court has char-
acterized § 800.04 as a "statutory rape" statute. *See J.A.S. v. State*,
705 So. 2d 1381, 1382–83 (Fla. 1998) (considering the 1993 version
of the statute in a case involving consensual sexual activity between
minors who were under 16); *see also* Anthony M. Amelio, *Florida's
Statutory Rape Law: A Shield or a Weapon? A Minor's Right of Privacy
Under Florida Statutes § 794.05*, 26 Stetson L. Rev. 407, 408, 417, 422
(1996) (referring to § 800.04 as a "statutory rape" statute).[3]

　　The Florida Supreme Court's characterization of § 800.04 as
a statutory rape statute is understandable. For example, with re-
spect to age, § 800.04(4) is silent about the age of the perpetrator.
A minor who is 12 to 15 years old (or maybe even younger) can
therefore be charged for engaging in sexual activity with another
minor in the same protected age group. As one Florida court has
put it, "it is appropriate to charge a minor under" § 800.04. *See State
v. J.A.S.*, 686 So. 2d 1366, 1368 (Fla. 5th DCA 1997), *aff'd,* 705 So. 2d
at 1386–87 (rejecting as-applied constitutional (privacy and equal

---

[3] The government agrees that § 800.04(4) is a "statutory rape offense." Re-
spondent's Br. at 23.

protection) challenges to the 1993 version of § 800.04 by two 15-year-old boys who had consensual sexual intercourse with two 12-year-old girls).

Moreover, § 800.04(4) does not require any age differential between the perpetrator and the victim. The Florida Supreme Court has explained that § 800.04(4) only has two elements: (1) that the defendant engaged in conduct meeting the statutory definition of sexual activity with the victim; and (2) that the victim was 12 to 15 years old at the time. *See Williams v. State*, 957 So. 2d 595, 599 (Fla. 2007). *Accord In re Standard Jury Instructions in Crim. Cases (No. 2005-3)*, 969 So. 2d 245, 282 (Fla. 2007) (approving a standard jury instruction for § 800.04(4) containing these two elements). So a 12-year-old (or maybe someone even younger) can violate § 800.04(a) by engaging in consensual sexual activity with a 15-year-old.[4]

---

[4]At least one other Florida statutory rape statute contains an age differential. *See* Fla. Stat. § 794.05(1) (providing that a person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age is guilty of a second-degree felony). The Florida Supreme Court, in a 4-3 decision with no majority opinion, held a former version of § 794.05(1) unconstitutional as applied to a 16-year-old who had consensual sexual activity with another 16-year-old. *See B.B. v. State*, 659 So. 2d 256, 260 (Fla. 1995) (plurality opinion).

A separate Florida statute, Fla. Stat. § 943.04354, allows a person convicted of violating Fla. Stat. § 800.04, among others, to petition for removal of the obligation to register as a sex offender or sexual predator if he or she meets certain criteria. One of the requirements is that the person was not more than four years older than the victim—who was 13 to 17 years old—at the time of the violation. *See* § 943.04354(1)(c).

*L.L.N. v. State*, 504 So. 2d 6 (Fla. 2d DCA 1987), is instructive in understanding the reach of § 800.04(4).  In that case the Second District addressed a constitutional challenge to the 1985 version of § 800.04 by a 14-year-old who was adjudicated delinquent for committing a lewd and lascivious assault on a minor under the age of 16.  It rejected the minor's contention that one who is 12 to 15 years old cannot be charged under the statute because he too is a member of the protected age group:

> The statute refers to "any person" and makes no exception for perpetrators under the age of sixteen. For example, a male under sixteen who engages in sexual intercourse with a female under sixteen would violate the statute irrespective of the fact that the victim was unchaste and the act consensual. The fact the legislature did not make an exception for perpetrators under sixteen does not render the statute unconstitutional. It simply means that the legislature intended no such distinction.

*Id*. at 8.  *See also* 6A Fla. Jur. 2d Criminal Law—Substantive Principles / Offenses § 759 (March 2024 update) ("The mere fact that there is no exception for perpetrators under the age of 16 does not make the statute [§ 800.04] unconstitutional.").

Given this landscape, we view § 800.04(4) as a statutory rape statute in which the least prohibited conduct is consensual sexual activity between adolescents 12 to 15 years of age, with no minimum age for the perpetrator and no age differential between the participants.  This is consistent with the way the Supreme Court

characterized the statute at issue in *Esquivel-Quintana*, 585 U.S. at 390 ("Because Cal. Penal Code § 261.5(c) criminalizes 'unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator' and defines a minor as someone under age 18, the conduct criminalized under this provision would be, at a minimum, consensual sexual intercourse between a victim who is almost 18 and a perpetrator who just turned 21.").

## C

We now turn to the generic federal definition of the sexual abuse of a minor.  Unfortunately, the sexual abuse of a minor is not defined in 8 U.S.C. § 1101(a)(43)(A) or in any other provision of the INA.  So, like the Supreme Court in *Esquivel-Quintana*, we "interpret that phrase using the normal tools of statutory interpretation." 581 U.S. at 391.

### 1

The BIA, in *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 996 (BIA 1999) (en banc), held 9-8 that physical contact is not required for a state conviction to constitute the sexual abuse of a minor under 8 U.S.C. § 1103(a)(43)(A).  The BIA looked to 18 U.S.C. § 3509(a)(8)—a statute dealing with the rights of child victims—and found its definition of sexual abuse to be a "useful identification" of what the sexual abuse of a minor means.  *See* 22 I. & N. Dec. at 995.  The BIA concluded that the sexual abuse of a minor encompasses certain crimes that "can reasonably be considered sexual abuse of a minor," such as "'the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist

another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children,'" and added that "[s]exually explicit conduct includes lascivious exhibition of the genitals or pubic areas of a person or animal." *Id.* (quoting §§ 3509(a)(8), (a)(9)(D)).

The BIA noted, however, that it was "not adopting [§ 3509(a)(8)] as a definitive standard or definition" but simply "invok[ing] it as a guide in identifying the types of crimes we would consider to be sexual abuse of a minor." *Id.* at 996. And it did not address whether the generic federal offense of sexual abuse of a minor requires some age differential between the perpetrator and the victim.[5]

In *United States v. Padilla-Reyes*, 247 F.3d 1158 (11th Cir. 2001), which involved a conviction under the 1987 version of Fla. Stat. § 800.04, we adopted a similar definition of the sexual abuse of a minor. Under that definition, "a perpetrator's physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification" qualified. *See id.* at 1163. We rejected the argument that the sexual abuse of a minor requires physical contact: "[T]he modifier 'sexual' does not limit the phrase's scope to abuse of the physical variety. Rather than describing the form of the

---

[5] Some of the dissenters in *Rodriguez-Rodriguez* would have looked to 18 U.S.C. § 2243 for assistance in defining the generic offense of the sexual abuse of a minor. *See* 22 I. & N. Dec. at 1000–01 (Guendeslberger, Board Member, dissenting). In *Esquivel-Quintana*, the Supreme Court considered § 2243 as "further evidence" of the meaning of the sexual abuse of a minor and did not mention § 3509(a)(8). *See* 581 U.S. at 393–95.

abuse as a 'sexual' physical contact, we think the word 'sexual' in the phrase 'sexual abuse of a minor' indicates that the perpetrator's intent in committing the abuse is to seek libidinal gratification." *Id.*

A number of our subsequent cases—some in the immigration context and some (as in *Padilla-Reyes*) in the criminal sentencing context where a provision of the Sentencing Guidelines cross-referenced § 1101(a)(43)(A)—continued to apply the same understanding of what conduct constitutes the sexual abuse of a minor. In those cases we continued to hold that physical contact is not required. *See, e.g., Bahar v. Ashcroft*, 264 F.3d 1309, 1312 (11th Cir. 2001) (holding that the BIA's interpretation of § 1101(a)(43)(A) in *Rodriguez-Rodriguez* was reasonable: "And, as we said in *Padilla-Reyes,* the word 'sexual' in the phrase 'sexual abuse of a minor' indicates that the perpetrator's intent in committing the abuse is to seek libidinal gratification."); *United States v. Ortiz-Delgado*, 451 F.3d 752, 757 (11th Cir. 2006) ("As in *Padilla-Reyes*, the plain language of the statute at issue here, Cal. Penal Code § 288, qualifies Ortiz-Delgado's previous offense conduct as 'sexual abuse of a minor,' and thus, a crime of violence under the Sentencing Guidelines."); *Chuang v. U.S. Att'y Gen.*, 382 F.3d 1299, 1301-02 (11th Cir. 2004) (involving a conviction under the 1996 version of Fla. Stat. § 800.04 and rejecting the petitioner's argument that we "should evaluate the factual circumstances of his offense instead of the terms of the statute under which he was convicted"); *United States v. Ramirez-Garcia*, 646 F.3d 778, 784 (11th Cir. 2012) ("Having determined in *Padilla-Reyes* that 'sexual abuse of a minor' is 'a perpetrator's physical or nonphysical misuse or maltreatment of a minor for a

purpose associated with sexual gratification,' the Court need only ensure that the scope of this definition is no narrower than the scope of the North Carolina offense of taking indecent liberties with a child. . . . [T]he *Padilla-Reyes* generic, federal definition . . . involve[s] either misuse or maltreatment of a minor for the perpetrator's sexual gratification.").

The government asserts that two of these cases, *Padilla-Reyes* and *Chuang*, control the outcome here because they held that convictions under earlier versions of Fla. Stat. § 800.04 constituted the sexual abuse of a minor. *See* Respondent's Br. at 19–20. We disagree for a simple but important reason.

*Padilla-Reyes* and *Chuang* only concerned what type of behavior or conduct constitutes the sexual abuse of a minor. Neither case addressed the different question presented here—whether the generic federal offense of the sexual abuse of a minor requires any age differential between the perpetrator and the victim. As a result, these cases are not controlling and do not bind us. "The prior panel precedent rule obligates us to follow the holdings of an earlier decision, but the holdings of a prior decision can reach only as far as the facts and circumstances presented to the court in the case which produced that decision." *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1031 (11th Cir. 2003) (internal quotation marks and citations omitted). In other words, "the prior precedent rule applies only to the actual holdings of prior decisions *on issues that were actually decided by the earlier panel.*" *United States v. Bazantes*, 978 F.3d 1227, 1244 (11th Cir. 2020) (emphasis added). *Cf. United States*

22-10971                 Opinion of the Court                    17

*v. Fulford*, 662 F.3d 1174, 1179 (11th Cir. 2011) ("Because none of those three decisions involved the question of how minor is defined for purposes of [U.S.S.G.] § 2G2.2(b)(3)(C), none of their holdings bind us in this case."); *Simpson v. U.S. Att'y Gen.*, 7 F.4th 1046, 1053 (11th Cir. 2021) (finding that precedent that "foreclosed" categorical overbreadth for one reason did not bar consideration of an independent reason it "did not address or resolve").[6]

2

The Ninth Circuit has specifically addressed whether the generic federal offense of the sexual abuse of a minor requires an age differential between the perpetrator and the victim. *See Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1158 (9th Cir. 2008) (en banc). In a unanimous en banc opinion, the Ninth Circuit held in *Estrada-Espinoza* that "when Congress added 'sexual abuse of a minor' to the list of aggravated felonies in the INA it meant 'sexual abuse of a minor' as defined in the federal criminal code [i.e., 18 U.S.C. § 2243]. The elements of the generic offense are thus: (1) a *mens rea* level of knowingly; (2) a sexual act; (3) with a minor between the

---

[6]Because the BIA in *Rodriguez-Rodriguez* did not address whether the generic federal offense of the sexual abuse of a minor requires an age differential, that decision is also not entitled to deference on the precise question before us. *See, e.g., Cabeda v. U.S. Att'y Gen.*, 971 F.3d 165, 172–73 (3d Cir. 2020) (explaining that deference to *Rodriguez-Rodriguez* was not appropriate with respect to whether the generic federal definition of the sexual abuse of a minor contains a *mens rea* requirement because § 3509(a)(8), on which the BIA relied, did not contain a *mens rea* requirement).

18                    Opinion of the Court                    22-10971

ages of 12 and 16; and (4) an age difference of at least four years between the defendant and the minor." *Id.* (applying the definition set out in § 2243).

The Seventh Circuit, in *Velasco-Giron v. Holder*, 773 F.3d 774 (7th Cir. 2014) (2-1 decision), later disagreed with the Ninth Circuit. According deference to the BIA's decision in *Rodriguez-Rodriguez*, the Seventh Circuit declined to look to § 2243 for guidance as to the generic federal offense of the sexual abuse of a minor and held that a four-year age differential between the perpetrator and the victim is not required. *See id.* at 776–79.

We note that *Velasco-Giron* predated *Esquivel-Quintana*. But in any event, we do not find *Velasco-Giron* persuasive. First, in *Esquivel-Quintana*, the Supreme Court addressed the generic federal offense of the sexual abuse of a minor under normal rules of statutory construction and did not reach the matter of deference to the BIA under the second step of *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984). *See* 581 U.S. at 387–98. Indeed, *Esquivel-Quintana* did not even mention the BIA's decision in *Rodriguez-Rodriguez*. *See id.* Second, contrary to what the BIA did in *Rodriguez-Rodriguez*, and what the Seventh Circuit did in *Velasco-Giron*, the Court in *Esquivel-Quintana* looked to § 2243—and not § 3509(a)(8)—for guidance. *See id.* at 394.[7]

---

[7] The Third Circuit also criticized the Ninth Circuit's use of § 2243 to determine the generic federal offense of the sexual abuse of a minor, but it did so in a case that did not present the question of an age differential. *See Restrepo v. Att'y Gen. of U.S.*, 617 F.3d 787, 796–98 (3d Cir. 2010). Again, that decision

22-10971                Opinion of the Court                19

In addition, *Velasco-Giron* is distinguishable on its facts. The state statute at issue there required that the perpetrator be at least three years older than the victim, *see* 773 F.3d at 775, so the Seventh Circuit was not presented with the question of whether the generic offense requires any age differential in the statutory rape context.

Following the analytical path used by the Supreme Court in *Esquivel-Quintana*, we agree with the Ninth Circuit that the generic federal offense of sexual abuse of a minor requires *some* age differential between the perpetrator and the victim.  But we do not go as far as the Ninth Circuit in declaring that the age differential must be at least four years.  Instead, we hold only that the age differential must be at least one year, and leave for another day whether the required age differential is any more than that.  *Cf. United States v. Rangel-Castaneda*, 709 F.3d 373, 381 (4th Cir. 2013) ("We do not attempt to establish a global definition of a 'sexual abuse of a minor' offense.").

To determine the generic federal offense of the sexual abuse of a minor, we consult the text of 8 U.S.C. § 1101(a)(43)(A), the ordinary meaning of the statutory language, the "structure of the INA, a related federal statute [i.e., 18 U.S.C. § 2243], and evidence from state criminal codes." *Esquivel-Quintana*, 581 U.S. at 393.  We

---

predated *Esquivel-Quintana*.  And although the Supreme Court in *Esquivel-Quintana* did not "import[ ] [§ 2243] wholesale" into the generic federal offense of sexual abuse of a minor, it did look to that statute for guidance in figuring out the age of consent element of the generic offense.  *See* 581 U.S. at 395.  Given *Esquivel-Quintana*, the Third Circuit's criticism of the Ninth Circuit's rationale seems off the mark.

also consider, to the extent helpful, dictionaries and other materials from the time when the sexual abuse of a minor was added to § 1101(a)(43)(A).    *See id.* at 391. *See also Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1026-27 (11th Cir. 2016).

As the Supreme Court explained in *Esquivel-Quintana*, Congress added the sexual abuse of a minor to the list of aggravated felonies in the INA in 1996.  *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 321(a)(i), 110 Stat. 3009-627 (1996).  "At that time, the ordinary meaning of 'sexual abuse' included 'the engaging in sexual contact with a person who is below a specified age or who is incapable of giving consent because of age or mental or physical incapacity.'" *Esquivel-Quintana*, 581 U.S. at 391 (quoting Merriam-Webster's Dictionary of Law 454 (1st ed. 1996)).  "By providing that the abuse must be 'of a minor,' the INA focuses on age, rather than mental or physical incapacity. Accordingly, to qualify as sexual abuse of a minor, the statute of conviction must prohibit certain sexual acts based at least in part on the age of the victim."  *Id.* (holding that the age of consent for statutory rape, which is a form of the sexual abuse of a minor, is 16).

One legal dictionary from 1996 contained an entry for statutory rape that referred to an age differential between the perpetrator and the victim.  *See* Merriam-Webster's Dictionary of Law 470 (1st ed. 1996) ("Many state statutes [for statutory rape] also specify a minimum age of the perpetrator or an age differential as

at least four years between the perpetrator and the victim."). Another legal dictionary, this one from 1999, confirmed this understanding with respect to sexual abuse and statutory rape. *See* Black's Law Dictionary 10 (7th ed. 1999) (defining sexual abuse as "[a]n illegal sex act, esp. one performed against a minor by an adult"); *id.* at 1267 ("Generally, only an adult may be convicted of [statutory rape]. A person under the age of consent cannot be convicted."). These dictionaries, though not determinative, are important data points for us to consider.

The statutory edifice also points in the direction of an age differential for the generic federal offense of the sexual abuse of a minor in the statutory rape context before us. Given that the sexual abuse of a minor is contained in § 1101(a)(43(A), a provision that also includes murder and rape, the "structure of the INA . . . suggests that sexual abuse of a minor encompasses only especially egregious felonies." *Esquivel-Quintana*, 581 U.S. at 394. Statutory rape consisting of consensual sexual activity between adolescents between 12 and 15—who belong to the same protected age group—does not seem to us to be an especially egregious felony that falls into the same category as murder and rape.

Like the Supreme Court in *Esquivel-Quintana*, 581 U.S. at 395–95, and the Ninth Circuit in *Estrada-Espinoza*, 546 F.3d at 1152–53, we also look for guidance to 18 U.S.C. § 2243, a criminal statute that Congress enacted in the same omnibus law that added the sexual abuse of a minor to the INA. *See* Pub. L. No. 104-208, §§ 121(7), 321, 110 Stat. 3009-31, 3009-627 (1996). Entitled "Sexual Abuse of

a Minor or Ward," § 2243 makes it a felony for certain persons to engage in a sexual act with certain minors. As relevant here, under § 2243 the victim has to be 12 to 15 years old and "at least four years younger" than the offender. *See* § 2243(a)(1)–(2). We don't import § 2443 wholesale, *see Esquivel-Quintana*, 581 U.S. at 395, but we take it as strong evidence that the generic federal offense of the sexual abuse of a minor includes an age differential of some kind.

Another relevant source is the Model Penal Code, which was first published in the 1960s. At the relevant time, it defined statutory rape as a "male who has sexual intercourse with a female not his wife . . . if . . . the other person is less than [16] years old and the actor is at least [four] years older than the other person." Model Penal Code § 213.3(1)(a) (Am. L. Inst. 1985). And it similarly defined sexual assault as a "person who has sexual contact with another not his spouse . . . if . . . the other person is less than [16] years old and the actor is at least [four] years older than the other person." Model Penal Code § 213.4(6) (Am. L. Inst. 1985). According to the drafters of the Model Penal Code, these age differentials were meant to address "the problem of the imposition of liability on a person of contemporary age and experience[.]" Model Penal Code, Part II Commentaries, at 386 (Am. L. Inst. 1980). *Accord* Wayne R. LaFave, Criminal Law § 7.20(c) (3d ed. 2000) (one way to deal with the "problem of relative culpability" is to "create exceptions to the crime of statutory rape by defining a range of age differences between the adolescent participants inside of which sexual intercourse is lawful").

Finally, we survey state statutes in effect in 1996. Those statutes, taken collectively, further support the view that there must be some difference in age between the perpetrator and the victim when the prohibited conduct is consensual sexual activity between adolescents who are 12 to15 years old.

When Congress added the sexual abuse of a minor to the list of aggravated felonies in the INA, 24 states required an age differential (or permitted a differential to be asserted as an affirmative defense) in at least some of their statutes dealing with statutory rape, sexual assault, sexual abuse of a minor, etc. *See* Ala. Code § 13A-6-62(a)(1) (1975) (two years); Alaska Stat. § 11.41.436(a)(1) (1990) ("sexual abuse of a minor": three years); Ariz. Rev. Stat. § 13-1407I (1994) (two years); Col. Rev. State. § 18-3-405(1) (1985) (four years); Conn. Gen. Stat. Ann. § 53a-71(a)(1) (1994) (two years); Iowa Code Ann. § 709.4.2.c(4) (1994) (five years); La. Rev. Stat. Ann. § 80.A(1) (1995) (two years); 17-A Maine Rev. Stat. § 254.1.A (1995) ("sexual abuse of a minor": five years); Md. Code, Art. 27, § 464CI(e)(3) (1992) (four years); Minn. Stat. § 609.344, subd. 1(b) (1992) (two years); Miss. Code Ann. § 97-3-65(1) (1993) (four years); N.J. Stat. Ann. § 2C:14-2.c(5) (1989) (four years); N. M. Stat. Ann. § 30-9-11.F (1995) (four years); N.Y. Penal Law §§ 130.25.2, 130.30 (1987) (four years); N.C. Gen. Stat. Ann. § 14-27.7A(a) (1995) (four years); Oregon Rev. Stat. § 163.345 (1991) (three years); 18 Pa. Con. Stat. Ann. § 3122.1 (1995) (four years); S.D. Codified Laws § 22-22-1(5) (1994) (three years); Tenn. Code Ann. § 39-13-506(a) (1991) (four years); Tex. Penal Code § 22.011(e) (1994) (three years); Utah Code Ann. § 76-5-406(11) (1992) (three years); Wash. Rev. Code §

61-8B-5(a)(i) (1988) (four years); W. Va. Code § 61-8B-5(a)(i) (1993) (four years); Wyo. Stat. Ann. § 6-2-304(a)(i) (1995) (four years).[8]

Another four states used an age differential to grade the severity of the offense or to mitigate the punishment prescribed for the offense. *See* Ga. Code Ann. § 16-6-3(a)–(b) (1995); Mont. Code Ann. §§ 45-4-501(a)(iii), 45-5-503(3)(a) (1995); N.D. Cent. Code Ann. § 12.1-20-05(1) (1977); Va. Ann. Code § 18.2-63 (1993). When these are added to the 24 states listed above, more than half of the states—28 in total—used an age differential to determine when consensual sexual activity between adolescents was proscribed, to grade the severity of the offense, or to mitigate the punishment.

Today even more states use an age differential of some kind in their statutory rape (or equivalent sexual assault) statutes. A 2012 review, for example, "demonstrate[d] that in most states it is not a crime for two teenagers of comparable age to engage in an act of voluntary sexual intercourse. That is, in thirty-eight states most voluntary sexual activity between teenagers of comparable age is not 'statutory rape.' . . . [In only twelve states is] there no limitation on the age of the defendant and no requirement of an age differential." Charles A. Phipps, *Misdirected Reform: On Regulating Consensual Sexual Activity Between Teenagers*, 12 Cornell J. L. & Pub. Pol'y 373, 390–91 (2003). *See also United States v. Gomez*, 757 F.3d 885, 906–07 (9th Cir. 2017) (holding that generic statutory rape

---

[8] Shortly after 1996, two more states codified an age differential. *See* 11 Del. Code Ann. § 762(d) (1998) (four years); Hawaii Rev. Stat. § 707.730(1)(c) (2001) (five years).

requires, as an element, a four-year age-difference between the perpetrator and the victim: "Forty-one states have an age difference in at least some of their statutory rape laws. Of those, thirty-two states require an age difference of four years or more."); Paul H. Robinson & Tyler Scot Williams, Mapping American Criminal Law: Variations Across the 50 States 209 (2018) ("About two thirds of the jurisdictions . . . recognize an exception to the statutory rape offense for persons who are close in age to the underage partner."); Ann High, *Good, Bad and Wrongful Juvenile Sex: Rethinking the Use of Statutory Rape Laws Against the Protected Class*, 69 Ark. L. Rev. 787, 795 (2016) ("[M]ost jurisdictions have abandoned the single age of consent approach in favor of age-gap reforms, which eliminate strict liability for certain degrees of sexual contact between minors within certain specified age differentials. This approach attempts to leave space for normal adolescent sexuality and some degree of sexual autonomy and privacy, while also safeguarding against age-disparity-based power imbalances that may impact young people as they navigate their sexual development."); Paul H. Robinson & Michael T. Cahill, Criminal Law § 15.6 (2d ed. 2012) (noting that in in statutory rape statutes "[i]t is common to specify that the offender must be a certain number of years older than the victim," though "[s]ome states have no such limitation").

And this trend is not limited to the states. On the federal side, one of the sex offender registration and notification provisions of the Adam Walsh Child Protection and Safety Act of 2006 states that "[a]n offense involving consensual sexual conduct is not a sex offense for the purposes of this subchapter . . . if the victim was at

least 13 years old and the offender was not more than 4 years older than the victim." Pub. L. No. 109-248, § 111 120 Stat. 592 (2006) (codified at 34 U.S.C. § 20911(5)(c)). So now there is another federal statute in the statutory rape context in which Congress has specified an age differential.

Based on the analysis and sources set out above, we conclude that, "in the context of statutory rape offenses that criminalize [consensual] sexual [activity]" between adolescents who are 12 to 15 years old, the "generic federal offense of sexual abuse of a minor requires" that the perpetrator be at least one year older than the victim. *See Esquivel-Quintana*, 581 U.S. at 390. Applying the categorical approach, the 2008 version of Fla. Stat. § 800.04(4) is broader than the generic federal definition because it does not have any age differential. That means that Mr. Leger's § 800.04(4) conviction does not constitute the sexual abuse of a minor and is not an aggravated felony under the INA. We vacate the BIA's contrary decision.

## IV

The Supreme Court has held that under 8 U.S.C. § 1229(a), a notice to appear must contain—among other things—the location, date, and time of the removal hearing. If it does not, it is deficient and cannot be cured by a later notice of hearing that provides the missing information. *See Niz-Chavez v. Garland*, 593 U.S. 155, 158–62 (2021) (decided in the context of the stop-time rule for accrual of continuous physical presence, 8 U.S.C. § 1229b(d)(1)); *Pereira v. Sessions*, 585 U.S. 198, 207–12 (2018) (same).

22-10971                Opinion of the Court                27

Mr. Leger argues, as he did before the immigration judge and the BIA, that his removal proceeding should have been terminated because the notice to appear did not include a date and time for the removal hearing and was therefore defective. *See* Petitioner's Br. at 62–69. We conclude that the BIA erred in resolving this issue because it misunderstood and therefore mischaracterized Mr. Leger's argument.

To recap, the notice to appear sent to Mr. Leger mentioned a location for the removal hearing but not the date or time at which he was to appear before an immigration judge. The immigration court subsequently issued a notice of hearing informing Mr. Leger that his removal proceeding was scheduled for July 9, 2019, at 8 a.m. A few days later, the government amended the notice to appear to include an additional ground for removability.

When Mr. Leger appeared before the immigration judge on September 18, 2019—recall that the initial hearing had been continued to allow Mr. Leger to obtain counsel—he moved orally and in writing to terminate the removal proceeding on the ground that the initial notice to appear was deficient. *See* A.R. 222, 663–68. The immigration judge denied the motion, stating that Eleventh Circuit precedent did not require the termination of a removal proceeding just because a notice to appear was deficient. *See* A.R. 222–23 ("The [Eleventh] Circuit has indicated that just because there's no time and date on it, does not invalidate the Notice to Appear . . . They have been addressed by the Board in the [Eleventh] Circuit, and they do not support termination of these proceedings.").

On appeal, the BIA ruled that that Mr. Leger's "motion to terminate proceedings based on an alleged lack of jurisdiction" was properly denied because a deficient notice to appear does not deprive an immigration judge of jurisdiction over a removal proceeding. *See* A.R. 10. The BIA correctly described our precedent as it stands today. *See Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1153–57 (11th Cir. 2019) (holding that 8 U.S.C. § 1229(a) "sets forth only a claim-processing rule" and that a defective notice to appear does not deprive an immigration judge of jurisdiction).

The immigration judge and the BIA erred because Mr. Leger never argued that the defective notice to appear deprived the immigration judge of jurisdiction. Instead, he recognized that § 1229(a) sets out a claims-processing rule and asked the immigration judge and the BIA to enforce it by terminating the removal proceeding. *See, e.g.*, A.R. 222 ("I would like to request termination because the NTA doesn't have date or time set, your honor."); A.R. 664 ("8 C.F.R. § 1003.14 . . . sets forth not a jurisdictional rule but a claim-processing one . . . [N]either 8 U.S.C. § 1229(a) nor 8 C.F.R. § 1003.14 speak to jurisdiction . . . As practitioners familiar with administrative law and general principles of federal jurisprudence well know, [a] claim-processing rule may be mandatory in the sense that a court must enforce the rule if a party properly raises it.") (internal quotation marks and citations omitted).

A claim-processing rule "seek[s] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson ex rel. Henderson*

*v. Shinseki*, 562 U.S. 428, 435 (2011).  It is "mandatory in the sense that a court must enforce the rule if a party properly raises it." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cleaned up).  And that is as true in the immigration context as it is elsewhere. *See Kemokai*, 83 F.4th at 891 (considering the claims-processing rule of exhaustion because it was raised by the government).

The BIA should have addressed and resolved Mr. Leger's argument that § 1229(a)'s claims-processing rule warranted termination of the removal proceeding due to the defective notice to appear.  We vacate and remand so that the BIA can address this argument.

To aid the BIA on remand, we offer the following thoughts.  First, the Seventh Circuit has held that a "noncitizen who raises a timely objection" to a defective notice to appear "is entitled to relief without also having to show prejudice from the defect." *De la Rosa v. Garland*, 2 F.4th 685, 688 (7th Cir. 2021).  Second, the BIA, treating § 1229(a) as a claims-processing rule, has also held that a noncitizen who seeks to terminate a removal proceeding due to a defective notice to appear does not have to demonstrate prejudice.  *See In re Fernandes*, 28 I. & N. Dec. 605, 607–08, 611–13 (BIA 2022) (2-1 decision).  A noncitizen's motion to terminate on this ground is timely if made "prior to the closing of pleadings" before the immigration judge.  *See id.* at 610–11.  Termination of the proceeding, however, is not required and the immigration judge may allow the government to cure (i.e., fix) the defect.  *See id.* at 613–16

(cautioning, in closing, that "[t]he precise contours of permissible remedies are not before us at this time").[9]

Given that the immigration judge and the BIA did not address the actual argument made by Mr. Leger, we do not opine on any of the issues related to the defective notice of appeal. Although the parties have addressed *Fernandes* in their briefs, the appropriate course is to vacate and remand to the BIA for it to resolve the matter in the first instance. *See Lauture v. U.S. Att'y Gen.*, 28 F.4th 1169, 1179 (11th Cir. 2022).

## V

We vacate the BIA's decision and remand for further proceedings consistent with our opinion.

**PETITION GRANTED.**

---

[9] In fact, the BIA has invited the filing of amicus briefs on the proper remedies under *Fernandes*. *See* BIA, Amicus Invitation No. 23-01-08 (Notice to Appear) (Aug. 1, 2023), https://www.justice.gov/eoir/page/file/1592111/download.